UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CYNTHIA HARRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 1:25-cv-1494 |
| | ) |
| ELI LILLY AND COMPANY, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT AND JURY TRIAL DEMAND

Plaintiff Cynthia Harris ("Ms. Harris" or "Plaintiff"), by counsel, hereby files her Complaint and Jury Trial Demand (the "Complaint") against Defendant Eli Lilly and Company ("Lilly," "Company," or "Defendant"). In support of her Complaint, Ms. Harris alleges, and states as follows:

### INTRODUCTION

1. Ms. Harris is a former employee of Lilly.

2. Ms. Harris brings this action against Lilly for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.S. § 2000e *et. seq.* and the Age Discrimination in Employment Act, as amended, 29 U.S.C.S. § 621 *et. seq.*

### PARTIES

3. At all times relevant, Ms. Harris resided and continues to reside in Marion County, Indiana.

4. At all times relevant, Ms. Harris was an employee as defined by Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, and the Age Discrimination in Employment Act ("ADEA"), as amended.

5. At all times relevant, Lilly has been an employer as defined by Title VII and the ADEA.

6. According to information maintained by the Indiana Secretary of State, Lilly is an Indiana for-profit corporation with its principal office located at Lilly Corporate Center, Indianapolis, Indiana 46285, which is located in Marion County, Indiana.

7. According to information maintained by the Indiana Secretary of State, Lilly's registered agent in Indiana is NATIONAL REGISTERED AGENTS, INC., 334 North Senate Avenue, Indianapolis, Indiana 46204.

## JURISDICTION AND VENUE

8. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1331.

9. The alleged discriminatory and unlawful acts were committed within the jurisdiction of the United States District Court for the Southern District of Indiana, Indianapolis Division.

10. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1), which allows for an action to be brought in the district where the Defendant resides or in which the cause of action arose.

## ADMINISTRATIVE EXHAUSTION

11. Ms. Harris exhausted all of the administrative proceedings available to her by timely filing a Charge of Discrimination on the basis of race, sex, age and retaliation with the U.S. Equal Employment Opportunity Commission (the "EEOC").

12. On March 11, 2025, Ms. Harris filed EEOC Charge No.: 470-2025-02737.

13. On April 28, 2025, the EEOC issued a Determination and Notice of Rights. A true and correct copy of the Determination and Notice of Rights is attached hereto as **Exhibit 1**.

14. Ms. Harris has initiated this lawsuit within ninety (90) days of her receipt of the EEOC Determination and Notice of Rights.

## GENERAL FACTUAL ALLEGATIONS

15. Ms. Harris is a fifty-nine (59) year old black female.

16. In May 1989, Ms. Harris earned a Bachelor of Science in Biology from Purdue University.

17. In May 1994, Ms. Harris earned a Doctor of Pharmacy from Purdue University.

18. In August 1994, Lilly hired Ms. Harris for the role of Clinical Research Administrator.

19. Aside from a 2.5 year post-doctoral fellowship at Indiana University – School of Medicine, Ms. Harris spent her entire career at Lilly in Medical Development ("MedDev") in various business units.

20. Ms. Harris worked for Lilly in various research roles for approximately twenty-eight (28) years.

21. Ms. Harris's role with Lilly immediately preceding her termination was Director - Clinical Research Scientist ("CRS") within Lilly's Immunology Business Unit ("IBU").

22. Ms. Harris worked in the CRS role from approximately April 2021 until her unlawful termination on September 12, 2024.

23. Throughout her career with Lilly, including prior to assignment to the IBU, and during her tenure with the IBU, Ms. Harris's work performance was duly recognized through positive performance evaluations and various awards.

24. For instance, each year from December 1994 through December 2022, Ms. Harris received favorable performance evaluations.

25. In addition, each year from 1994 through 2023, Ms. Harris received merit based awards from Lilly.

26. In or around July 2022, Maria Silk ("Ms. Silk") moved into a management role in MedDev and became Ms. Harris's second-level manager.

27. Ms. Silk is approximately ten (10) years younger than Ms. Harris and is white.

28. During the time Ms. Silk moved into her management role through until October 2023, Ms. Harris reported directly to Sreekumar Pillai ("Mr. Pillai").

29. In turn, Mr. Pillai reported directly to Ms. Silk.

30. Starting in or around October 2022, despite the fact that Ms. Harris did not report directly to Ms. Silk, Ms. Harris began to experience increased scrutiny and demeaning conduct by Ms. Silk.

31. Ms. Silk routinely initiated communications with Ms. Harris that were unduly harsh and dismissive of Ms. Harris's established performance record.

32. The majority of the projects that Ms. Harris worked on throughout her employment with Lilly and during the time that she worked with the IBU were comprised of a team of various Lilly employees and external partners all working in a collaborative manner.

33. Despite the team based approach and collaborative nature of the work, Ms. Silk routinely accused Ms. Harris of having deficient performance, acting as if Ms. Harris worked with complete autonomy.

34. If or when any complication with a project arose, Ms. Silk assigned all fault associated with any complication to Ms. Harris, irrespective of Ms. Harris's actual role or responsibilities with the project.

35. In late 2022, during a study team meeting, Ms. Silk entered a generic question into an electronic group chat, which was not directed to any specific team member.

36. Following the meeting, in an aggressive tone, Ms. Silk approached Ms. Harris and demanded Ms. Harris to answer why she did not respond to the question.

37. In or around January 2023, Ms. Silk called Ms. Harris and started the call by stating in an aggressive tone, "I need you to do your job!" Ms. Silk did not treat Ms. Harris's younger white male coworker similarly.

38. From January 2023 through her unlawful termination in September 2024, Ms. Silk verbally attacked Ms. Harris at least once each week.

39. Subsequent to the telephone call with Ms. Silk in or around January 2023, despite Ms. Harris's exemplary work and numerous contributions to the IBU, Ms. Harris's efforts to advance her career with Lilly were obstructed.

40. In early 2023, Ms. Harris tried to get promoted with Lilly.

41. On or around March 2023, Ms. Harris received unexplained and inconsistent feedback from the promotions committee regarding her promotion application.

42. In October 2023, Ms. Silk told Ms. Harris that she would no longer directly report to Mr. Pillai and instead would begin reporting directly to her going forward.

43. In or around October 2023, Ms. Harris participated in a formal, but non-disciplinary Employee Relations ("ER") performance review with Adrian Anderson ("Mr. Anderson").

44. The ER performance review was prompted by Ms. Silk.

45. On November 1, 2023, Ms. Harris responded in writing to the various items she discussed with Mr. Anderson during their meeting.

46. Ms. Harris also reported to Mr. Anderson that she did not feel psychologically safe working with Ms. Silk and provided specific examples to him.

47. During the ER process, Ms. Harris also requested to be reassigned to a different manager.

48. Despite Ms. Harris's complaints, Lilly took no corrective action against Ms. Silk and denied Ms. Harris's request for reassignment.

49. Ms. Silk rated Ms. Harris's 2023 performance as "does not meets." This was the first unsatisfactory performance review that Ms. Harris received throughout her lengthy employment with Lilly.

50. During the first quarter of 2024, Ms. Harris met with Renata Lima ("Ms. Lima"), Ms. Silk's direct supervisor and complained about Ms. Silk's treatment towards her.

51. On May 1, 2024, Ms. Silk told Ms. Harris that she would be making a second referral to ER regarding alleged performance issues.

52. On June 11, 2024, Ms. Harris met with Michael Catano ("Mr. Catano") with ER.

53. Mr. Catano told Ms. Harris that he would be conducting a "balanced review" of her performance.

54. During the June 11, 2024, meeting, Ms Harris complained to Mr. Catano that Ms. Silk had been harassing her for over a year. Ms. Harris outlined various examples of harassment to Mr. Catano.

55. Despite making this complaint, Mr. Catano did not investigate Ms. Harris's complaint or refer her complaint to another individual in ER or Human Resources.

56. Instead, Mr. Catano told Ms. Harris to consider submitting an "ER Ticket."

57. On June 14, 2024, Ms. Harris emailed Mr. Catano requesting additional information about the "balanced review" process and the "ER Ticket" process.

58. Ms. Harris received an auto-response stating that Mr. Catano was unavailable and to contact Jill Scott ("Ms. Scott").

59. Later on June 14, 2024, Ms. Harris forwarded her questions to Ms. Scott.

60. Ms. Scott did not specifically respond to Ms. Harris's questions.

61. Ms. Scott is a white female approximately 40 years old.

62. On June 20, 2024, Ms. Harris met with Ms. Silk and Ms. Scott.

63. During the June 20, 2024, meeting, despite being told by Mr. Catano that he would be conducting a "balanced review" of her performance, Ms. Silk placed Ms. Harris on a Performance Improvement Plan ("PIP").

64. Ms. Silk and Ms. Scott told Ms. Harris that the duration of the PIP was 90 days and that progress meetings would be held at the end of days 30, 60, and 90.

65. There was no legitimate performance reason for Ms. Silk to put Ms. Harris on a PIP.

66. The PIP was also vague and subjective.

67. Ms. Harris made several attempts to gain clarity from Ms. Silk and Ms. Scott regarding the PIP, which were ignored.

68. Nevertheless, Ms. Harris worked diligently to meet the PIP objectives.

69. By June 28, 2024, Ms. Harris successfully interpreted data, followed by her completion of medical oversight requirements by July 31, 2024, as required by the PIP.

70. On August 6, 2024, Ms. Harris delivered a secondary data presentation, which Ms. Silk falsely criticized despite its alignment with the expectations in the PIP.

71. Rather than acknowledging Ms. Harris's successful performance of the PIP expectations, on August 22, 2024, Ms. Silk modified the PIP, arbitrarily adding new expectations.

72. By September 10, 2024, Ms. Harris had addressed everything in the PIP that had been required, and Lilly had no other alleged performance issues with Ms. Harris.

73. However, on September 12, 2024, Lilly abruptly terminated Ms. Harris, prior to the expiration of the 90 day PIP period.

74. Ms. Harris was fifty-eight (58) years old at the time of her termination.

75. Similarly situated employees, including substantially younger, non-black, and male employees were treated more favorably.

76. Lilly replaced Ms. Harris with a substantially younger, white male.

77. As a result of Lilly's unlawful employment practices, Ms. Harris has incurred lost wages and lost benefits.

78. As a result of Lilly's unlawful employment practices, Ms. Harris has suffered emotional and physical distress and damage to her professional reputation, including, but not limited to being omitted from appropriate designations in scientific publications and other materials related to studies in which she participated.

79. Lilly's unlawful employment practices were willful and done with malice or reckless indifference to Ms. Harris's federally protected rights.

80. As a result of Lilly's unlawful employment practices, Ms. Harris is entitled to recover reasonable attorneys' fees and costs.

## COUNT I: RACE DISCRIMINATION

81. All preceding paragraphs are incorporated herein by reference.

82. As set forth above, Lilly engaged in intentional race discrimination against Ms. Harris in the terms and conditions of her employment in violation of Title VII including both race-based hostile work environment and race-based disparate treatment because of her race.

83. Lilly intentionally caused infringement of Ms. Harris's rights pursuant to Title VII.

84. Lilly's unlawful discriminatory acts caused Ms. Harris to suffer economic damages as well as emotional distress and physical distress.

85. Lilly acted with malice and/or with reckless indifference to Ms. Harris's federal protected rights, entitling her to an award of punitive damages.

86. Ms. Harris is entitled to recover reasonable attorneys' fees and costs incurred in this action.

87. Lilly is liable to Ms. Harris for emotional distress and other compensatory damages, lost wages and benefits, punitive damages, prejudgment interest, post judgment interest, and attorneys' fees and costs.

## COUNT II: SEX DISCRIMINATION

88. All preceding paragraphs are incorporated herein by reference.

89. As set forth above, Lilly engaged in intentional sex discrimination against Ms. Harris in the terms and conditions of her employment in violation of Title VII including both sex-based hostile work environment and sex-based disparate treatment because of her sex.

90. Lilly intentionally caused infringement of Ms. Harris's rights pursuant to Title VII.

91. Lilly's unlawful discriminatory acts caused Ms. Harris to suffer economic damages as well as emotional distress and physical distress.

92. Lilly acted with malice and/or with reckless indifference to Ms. Harris's federal protected rights, entitling her to an award of punitive damages.

93. Ms. Harris is entitled to recover reasonable attorneys' fees and costs incurred in this action.

94. Lilly is liable to Ms. Harris for emotional distress and other compensatory damages, lost wages and benefits, punitive damages, prejudgment interest, post judgment interest, and attorneys' fees and costs.

### COUNT III: AGE DISCRIMINATION

95. All preceding paragraphs are incorporated herein by reference.

96. As set forth above, Lilly engaged in age discrimination against Ms. Harris in the terms and conditions of her employment in violation of the ADEA including both age-based hostile work environment and age-based disparate treatment because of her age.

97. Lilly intentionally caused infringement of Ms. Harris's rights pursuant to the ADEA.

98. As a result of Lilly's discriminatory acts, Ms. Harris has suffered and will continue to suffer monetary damages unless and until the Court grants relief.

99. Lilly acted willfully or with reckless indifference to Ms. Harris's federal protected rights thereby entitling Ms. Harris to liquidated damages.

100. Ms. Harris is entitled to recover reasonable attorneys' fees and costs incurred in this action.

101. Lilly is liable to Ms. Harris for lost wages and benefits, liquidated damages, prejudgment interest, post judgment interest, and attorneys' fees and costs.

### COUNT IV: RETALIATION

102. All preceding paragraphs are incorporated herein by reference.

103. Lilly retaliated against Ms. Harris in the terms and conditions of her employment on the basis of her protected activities, in violation of Title VII and the ADEA.

104. Lilly intentionally caused infringement of Ms. Harris's rights pursuant to Title VII and the ADEA.

105. Lilly's unlawful discriminatory acts caused Ms. Harris to suffer economic damages as well as emotional distress and physical distress pursuant to Title VII.

106. Lilly's unlawful discriminatory acts caused Ms. Harris to suffer economic damages pursuant to the ADEA.

107. Lilly acted with malice and/or with reckless indifference to Ms. Harris's rights, entitling her to an award of punitive damages pursuant to Title VII.

108. Lilly acted willfully or with reckless indifference to Ms. Harris's federal protected rights thereby entitling Ms. Harris to liquidated damages pursuant to the ADEA.

109. Ms. Harris is entitled to recover reasonable attorneys' fees and costs incurred in this action pursuant to Title VII and the ADEA.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Cynthia Harris respectfully requests that this Court enter an Order:

A. Requiring Lilly to reinstate Ms. Harris to her former position or substantially equivalent position;

B. Awarding all lost wages and benefits Ms. Harris has sustained and will sustain as a result of Lilly's unlawful conduct;

C. Awarding front pay in an amount equal to the wages and benefits that Ms. Harris may reasonably be expected to lose after trial as a result of Lilly's unlawful conduct should the Court determine that an order requiring reinstatement is not feasible or appropriate;

D. Awarding pre-judgment interest;

E. Awarding compensatory damages for past and future non-pecuniary losses resulting from the unlawful employment practices complained of above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

F. Awarding punitive damages for Lilly's malicious and/or reckless conduct described above in amounts to be determined at trial;

G. Awarding liquidated damages in an amount to be determined at trial;

H. Awarding the costs maintaining this action, including an award of reasonable attorneys' fees; and

I. Awarding all other relief the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

Ms. Harris demands a trial by jury on all triable issues.

Respectfully submitted,

*s/Kimberly D. Jeselskis*
Kimberly D. Jeselskis, Attorney No. 23422-49
JESELSKIS BRINKERHOFF AND JOSEPH, LLC
320 North Meridian Street, Suite 428
Indianapolis, Indiana 46204
Telephone: (317) 220-6290
Facsimile: (317) 220-6291
kjeselskis@jbjlegal.com

*Counsel for Plaintiff*